The next matter before us this morning is 23-1055, Leberenz v. Wilson. You can correct my pronunciation. May it please the court and counsel, your honors, my name is John Osgood. I represent Captain, Appellant Captain Kenneth Wilson and the cross appellee Shelby Shields in this matter brought by the appellant, I'm sorry, the cross appellant and the appellee Mrs. Leberenz, Sarah Leberenz. I would like to reserve approximately five minutes at the close of my opening argument simply because there are issues to address on Mrs. Leberenz's cross appeal and I also want to provide deference to my colleague with her, with respect to her argument. Well, it's your responsibility to protect that five minutes, so good luck. I understand, your honor. I'm going to, I'm going to do my very best, I wanted to just outline it for the court. Your honors, as a, the first issue is that the district court in this case erred in denying summary judgment as to Captain Wilson individually upon application of the doctrine of qualified immunity. As this court is aware, given the extensive jurisprudence that it's issued, the inquiry is to determine whether the violative nature of Captain Wilson's particular conduct is clearly established under precedent from the United States Supreme Court, this circuit, or a consensus of other circuits. As this court's aware, the clearly established law cannot be established at a high level of generality. And at the district court level, Judge Wong noted that plaintiff appears to concede and that reflects the same or substantially similar facts to this case. We're looking at a de novo, aren't we? We are looking at a de novo review, yes, your honor. So we don't have to agree with that statement? No, I'm providing it simply for context within my argument, your honor. So where does that leave us? This is not, as the appellants characterize it in their briefing, an easy case. There's no basis for the argument that Captain Wilson was on notice of a specific duty that he was required to undertake to prevent Mr. May's suicide. Well, isn't our case law pretty clear that if you have knowledge that someone is a suicide risk in prison, that you must do something? It depends, your honor. It depends. And there is evidence in the factual record that Captain Wilson, in fact, did do something. Captain Wilson was aware of Mr. May's being in an intoxicated state based on his limited, in terms of moments, interaction with him and following May's singular comment that he was indeed trying to kill himself. Based on this interaction, he determined something more should be done, and he determined that Mr. May's, that inquiry should be made into whether Mr. May's was eligible for detox and that a call be made to mental health. And that call occurred. It didn't, as... So doing something is... What he did, you think is really doing something? I'm not sure it is doing something. What he did is doing something. He's in charge of the jail. That's correct, your honor. What he did is doing something, and particularly in the context of the information that he had, not, and the fact that this, that clearly established law under the jurisprudence of this court and the United States Supreme Court, does not establish a specific duty that he was required to undertake. I'm sorry, go ahead. What about to take reasonable steps to protect a prisoner's safety and bodily integrity? I mean, that's a pretty, I think, a duty that's been spelled out in our case law, and here you mentioned, you know, he hears one suicidal ideation when someone's intoxicated, but he kind of glossed over what may be the most significant thing that he observed, which was an individual actually engaging in self-harm that he witnessed. So, if I marry what is a reasonable step to protect bodily integrity with the observance of someone actually engaging in bodily harm, how do you square that? Well, there's a difference between the bodily harm that Mr. Mays was engaged in at the time he made the comment, which was not necessarily going to lead to, which was not a suicidal attempt, your honor. I mean, he was banging his head against a metal divider. That was not a suicidal attempt. Well, he said it was. He said, I'm trying to kill myself right now. That's a quote from Mr. Mays that's in the record. That is a quote from Mr. Mays that's absolutely in the record, and that's absolutely the singular statement that Mr. Mays made to Captain Wilson and to Officer Macias. However, that statement is completely devoid of context as compared to the case law and the decisional case law that the court, that the petitioner, I'm sorry, that the appellants provided to support the argument that qualified immunity should not apply to Captain Wilson. What does that mean that's devoid of context? I don't understand what you're saying. Well, this goes to the district court's application of the sliding scale as opposed to applying specifically clearly established law on a similar or a substantially similar set of facts. And as this court is aware ... Are you saying that the knowledge has to be established the same way, that each of the people that are asserting qualified immunity have to have attained their knowledge of the prisoner's suicidal state in the same way for it to be clearly established? Not necessarily. Okay. But there's not a case, there is simply not a case on point, or not directly on point. I'm not saying it's a case that, and we're not arguing that a case has to be directly on all fours with this particular set of facts. Well, what is it that is missing here? I mean, we have case law that very clearly states if you have subjective knowledge that a prisoner is in danger of killing him or herself, that it triggers an obligation to take reasonable efforts to prevent suicide. That's an application ... Again, Your Honor, I believe that's an application of the sliding scale as opposed to clearly established law. No, that's not an application. That's a restatement of the holdings of cases. Let me ... You said that he, Captain Wilson, did something to facilitate a call to a mental health facility. Is that what I heard you say? That's correct, Your Honor. Well, he testified he wasn't even aware of the attempt to call the mental health facility. He noted that there was a need to potentially do something more relative to Mr. Mays' state of intoxication. To whom did he note that? He noted that in his testimony. That's the ... Well, no. He's got to communicate that then to somebody. Did he communicate it to Shields? He did not communicate that to Ms. Shields, no. Did he communicate it to anyone? Not to my knowledge, Your Honor. Well, so nice thoughts are good enough, right? Well, Your Honor, again, the argument ... Again, it's simply not established under clearly established ... It's not clearly established law that he was on notice of a specific duty that he was required to undertake. Well, he doesn't have to be on notice of the duty. He has to be on notice that the person is suicidal, and then the law imposes a duty on him. I mean, it's clearly established under our case law. Would you agree? It's clearly established under our case law that if a person in a position of Captain It's clearly established, yes, but in this particular context and under this particular set of facts, he didn't have a clear understanding that this particular individual was suicidal based upon the singular comment that he made. Okay, so you're saying he did not have subjective knowledge that this person was suicidal. That's correct, Your Honor. Okay, well, there's certainly an issue of fact on that, isn't there? I don't believe there is because I don't believe it's ... I saw him beating his head against the cell, and Mr. Mays said, I'm trying to kill myself right now. I mean, a reasonable jury could find that that was enough to put the prison personnel that heard it to be aware that he was suicidal. But again, Your Honor, I'll go back to my point that I started with. The approach regarding the aggregation of the factors of which he was aware does not in and of itself establish a clear duty that he owed.  Are you saying that the facts that are pled could not . . . a reasonable jury could not find he knew that Mr. Mays was suicidal? That's correct, Your Honor. Okay. The district court, though, aren't you stuck with the district court's determination that there is an issue of fact? Didn't our case law indicate that? I don't believe we are, Your Honor, because it's not . . . it's not clearly established under this precedent that under this set of facts . . . You do agree that under our case law, you are stuck with the determination by the district court that based on the record before that district court that there are sufficient facts to indicate subjective knowledge of the problem. To the extent that there is a dispute of fact, yes. I want to alert you to your time because you wanted to stay five. We'll reserve the rest of our time for rebuttal. Thank you, Your Honor. May it please the court. Meharam for Plaintiff Sarah Liberanz, Jackson's mother, and personal representative of his estate. And I'd like to acknowledge that Ms. Liberanz is in the courtroom today. So while in jail, a highly intoxicated Jackson said he was trying to kill himself while repeatedly hitting his head against the wall. Defendant Wilson and Wells saw and heard this, and then they told defendant Shields about his behavior and that they feared he was suicidal. But all three defendants still left him in the cell without removing dangerous items, without sending him to detox or mental health, and without even monitoring the camera footage that was constantly streaming footage of his cell. Jackson then killed himself. His body was not found until the next morning. And none of these defendants are entitled to qualified immunity. Now you're going to argue your cross appeal with your response here. That's correct, your honor. Okay. Why do you have a right to even make a cross appeal argument? It's pretty clear in qualified immunity that there's a right to an interlocutory appeal if immunity is denied, but no such right if immunity is granted. Certainly, your honor. So we do think pendant appellate jurisdiction over the other two defendants here is appropriate because the claims are so inextricably intertwined. We're talking about the same set of facts and the same set of law here that shows that those defendants also violated clearly established law. Not the same facts. Anytime you have qualified immunity, it's very defendant specific. And for each one, you have to independently evaluate specifically what that person knew and specifically what that person did. So I just, I'm not convinced you have pendant jurisdiction here, but you can try to convince me otherwise. Certainly, your honor. We understand it's the rare case where you exercise pendant appellate jurisdiction, we think this is one of those rare cases because the facts are so overlapping and that any differences that do exist are just dwarfed by those But we understand that that is a rare situation. And I'm happy to focus my discussion today on defendant Wilson. So I'll start there with defendant Wilson, who knew three things. He knew Jackson was highly intoxicated. He knew he was hitting his head against a cell wall and that he described that behavior as trying to kill himself. We also knew that he drew the correct inference from all that conduct. He said that he feared Jackson was suicidal. That's at 2 Appendix 133. He also said, you know, we have to, have to take him to detox or do something more for him, but then he didn't do anything. He didn't remove dangerous objects from the cell. He didn't put him on suicide watch. He didn't connect him to detox or do much of anything for that matter. So here we have- Wilson's counsel indicated that he did not direct those comments to anyone. Is that correct? So your honor, I believe he told defendant Shields that he feared Jackson was suicidal and on the way out of the cell, he told defendant Wells, you know, this general statement, we have to maybe take him to detox or do something more for him. And our contention is that shows that he was aware of a specific suicide risk that Jackson was facing. He vocalized- Shields, excuse me, he says this to Wells? The comment about doing something more. I believe he says on the way out of the cell when Wells is there as well. Yes. Well, Wells was one, the arresting officer who brought the plaintiff in to the jail, right? That's correct. If the plaintiff should be transferred elsewhere to detox or elsewhere to do something more, wouldn't that fall to Shields to do? Well, your honor, sorry, defendant Wells to do, but I do think that would have been the responsibility of all of the defendants. So certainly defendant Wells was obligated to do that. But also defendant Wilson, as the person in charge of the jail, was obligated to take reasonable steps to protect Jackson. And if one of those reasonable steps was taking him to detox, that was his duty as well. Now, this court's case law in Cox and Crane is clear that the clearly established law requires an officer, once they have that specific knowledge that a particular to take reasonable steps. And wasn't Crane decided two years after these events? It was, your honor. So I think Crane is still important just for two reasons. First, it reaffirmed twice that Cox did set out the clearly established law. And of course, Cox predated the conduct here. It also canvassed the case law of this court's sister circuits and said, quote, you know, it said that those cases, quote, reiterate the principle, end quote, articulated in Cox. And it was talking there about this court's sister circuit decisions that all predated the conduct here that we also rely on in our brief. So just sort of reaffirms this idea that that law is clearly established both by this court and a robust consensus of out-of-circuit authority. And your honor, while we do think that Cox and Crane, too, are sufficiently specific on their own terms to clearly establish the law here, we have much more. So we have case law on very factually similar circumstances where officers were denied immunity. So I'll start, you know, my friend on the other side was talking a lot about, well, Officer Wilson didn't have a duty to do something specific. Now, we do think Cox and Crane are specific enough, certainly, but we do have cases where officers were specifically denied immunity because they failed to remove items, dangerous items from the cell. So that's Converse, Snow, Coleman and Elliott. In all of those cases, officers knew someone was suicidal and they didn't remove a bedsheet from the jail cell. That's exactly one of the failures that Defendant Wilson and the other defendants did here. But, quote by me, it's not a negligence standard, right? I mean, Officer Wilson could have decided to do something and it may have been ineffective and Mr. Mays may have succeeded in killing himself anyway. That would not be a problem under our case law, right? That wouldn't give you a cause of action. No, Your Honor, and I think here we're not even close to that world because Defendant Wilson did absolutely nothing. So it's not that he did something and it was somehow not enough. He didn't do anything at all. And that is the one thing that clearly established law prohibits. You know, he didn't remove items and the specific cases I've talked about go to that specific failure. There are also cases that we pointed to where the failure was one of not sending the person out to a hospital or mental health or not sending someone out or not monitoring them closely once you're aware that there are suicide risks. And so those cases on monitoring, for example, are again Converse, Snow and Coleman where officers were specifically denied immunity because they did not closely watch someone either on a video screen or or via physical checks. And so all of these cases, certainly in conjunction with this court's own case law in Cox and Crane, put Defendant Wilson on notice that once he learned Jackson was at risk of suicide, he had to do something to help prevent that from happening. And if he turned to his subordinates and said, call facility and arrange for transfer. So there are two points on that. First, I don't think it would. But we also know that he didn't quite do that. So he himself testified that he was not aware of an attempt to call mental health. That's at 3 Appendix 78. So, you know, in his own testimony, he didn't even take that one step. But even if he had taken that step, you know, once there was that failed call to connect to mental health and if he was aware that it failed, he couldn't just stop there. You know, this court said in Lucas Return Key that just doing something when that something is totally inadequate to the situation at hand is not enough. And that makes sense. That's what other courts have also said in the jail suicide context. So, for instance, in Cavalieri, the Seventh Circuit case, one of the officers, you know, gave the same sort of defense. That person said, hey, you know, I said I tried to arrange a counselor for this person. All right. I offered to do that. And the court denied that officer immunity because that's just not enough when you're talking about someone who is at risk of suicide. And here, you know, Wilson didn't even do anything as basic as that. And your honors, I'd also like to turn just quickly to one factual point that appears to contest in his briefs, which, again, given the posture of this appeal, isn't proper. But Defendant Wilson notes or suggests that he only saw Jackson hitting his head one time. And I want to make sure the record is clear that that's not accurate. What I believe he's referring to is a part of the district court's decision at 3 Appendix 78, where the district court recognizes that Wilson conceded that he saw Jackson hit his head at least one time after first denying that he saw that at all. Now, when you watch the video at 9.57 p.m., you can see that Wilson is watching Jackson repeatedly hit his head against the wall over and over, so much so that he then goes into the cell, physically stops Jackson from doing that and says, you know, you've got to stop smacking your head on the wall. Then later he comes back at 9.59, standing outside the cell area and from there can hear and possibly even see that the hitting is continuing. So he saw multiple head strikes. He also, of course, heard the statements that I'm trying to kill myself. And he knew that Jackson was suicidal. So and, you know, I don't want to belabor the point, but under this court's case law, under a robust consensus of authority, his failure to act violated clearly established law. And it also violated the specific jail policies here. So the policy said once you have awareness that somebody is at risk of harm, you have to do certain things. You have to remove everything from their cell except a suicide suit and a mattress. That didn't happen. You have to monitor them with 10 minute camera checks and 20 minute in-person checks. That didn't happen either. You have to contact mental health to do an evaluation. That didn't happen either. And so whether this court relies on tense or good authority in Cox and Crane or a robust consensus of out-of-circuit authority or even the hope obviousness doctrine and this sort of jail policy that Gabe put these officers on notice, certainly Defendant Wilson is not entitled to immunity. I think the district court absolutely got that right. Do you distinguish what our law says about the duty to react to what one has knowledge of from an individual capacity versus the supervisory capacity? Can you help sort of distinguish how that applies in this case? Sure, Your Honor. So I think a state of Booker is most helpful there because in that case, this court said that when the supervisor is intimately involved in the underlying conduct, there is no need to do a separate or special qualified immunity analysis for that person in his supervisory capacity. And so here, Defendant Wilson's failures violated clearly established law both in his capacity as a jailor, but also in his capacity as a supervisor. So the appropriate course would be to allow both of those claims to go forward and then to have a jury essentially make the decision about whether they want to hold him liable in one capacity or another or both or neither. Can you short circuit that by addressing first the defendant as a jailor and if the decision is there is no qualified immunity, is that necessarily established as the same if he's the supervisor of jailors? I think here where the conduct, his conduct as a jailor and a supervisor is so related to each other, it's so much the same that I do think that would result. I do think there are a couple of other things that also go to his role as a supervisor. So, for instance, his knowledge that Defendant Macias had recently resigned, specifically citing a lack of training and that he left that person with Jackson anyway, is something that happened in his role as a supervisor. But because he was so closely involved with this conduct as a jailor, I do think denying him qualified immunity in that capacity would essentially be enough to deny him immunity as a supervisor as well. And I think that's what a state of Booker would permit this court to do. Your Honor, if I may briefly talk about Shields and Wells, I do want to reiterate that both of these other defendants had essentially the same knowledge that Defendant Wilson had. So Defendant Wells also saw the hitting of the head. She knew he was intoxicated. She also heard him say, I'm trying to kill myself. She's seeing this from the capacity of being a dispatcher, correct? And doesn't that create a problem with clearly established law? So this is Defendant Wells, Your Honor, who brought him to the jail. I'm sorry. I hit myself with Shields. OK, you know, he's not involved. He's just delivering this person. I don't think that's quite right, Your Honor, because for a number of reasons. So Defendant Wells called her supervisor while she was at the jail and her supervisor told her to make sure Jackson was on suicide watch and that he was connected with mental health. So her supervisor certainly believes she had authority at the jail. And she did something. According to her, she said she doesn't control the jail. She just delivers in there. And she went to the person who does control the jail, Captain Wilson, and said, you need to put him in a mental health facility. She passed on the message and relied on him to do something. Well, Your Honor, Defendant Wilson said she didn't pass on that that information. And so we do have to construe that fact against her. But, you know, more than that, I think Defendant Wells had the authority to do something herself. You know, she was in that cell. She was in the dispatcher. She was telling Jackson what to do and what not to do. She was certainly acting with authority that evening. And she didn't even sign over. There was nothing to suggest that Defendant Wells had any control over the jail. Your Honor, I think there is something to suggest that, many such things, actually. So there's her supervisor's comments that's telling her what to do while in the jail. There's her own conduct going into the cell, telling Jackson what to do and what not to do. And the fact that she didn't even formally sign over custody of Jackson until after he began hanging. And then, you know, you add to that Defendant Shields' testimony that they did not call detox because Defendant Wells didn't want to do so. It's clear that she certainly could have acted and, in fact, prevented, perhaps, some action from happening here. Are there any further? You're out of time. Yes. OK, thank you. Thank you, Your Honor. May it please the Court, fellow counsel, I am Leslie Schluter. I represent Elka Wells. Elka Wells was a road deputy who was working court security, who also helped out with assistance on calls on the weekend if needed. The first issue I would like to address is the issue of pendant jurisdiction. We do not believe, as the court has already observed, that the facts are the same, that this satisfies the standard of being inextricably intertwined, and each official who is present before the court, whether as appellant or as appellee, is here on distinct facts. So we ask that the court decline to exercise pendant jurisdiction. If the court elects to accept pendant jurisdiction over the cross appeal, we ask that the District Court Judge Wong, in her decision to grant summary judgment based on qualified immunity, to Elka Wells. I believe that the plaintiff's arguments are answered in the combined brief that contains Deputy Wells' sections. I invite any questions, but otherwise wish to turn over the time to my fellow counsel. OK. Thank you. No questions. Your Honor, we would again reiterate Ms. Schluter's comments relative to the court declining to exercise pendant jurisdiction with respect to the claims, both against Ms. Wells and against Shelby Shields, because we are indeed not talking about the same facts here as to the supervisory liability issue. Estate of Booker v. Gomez is not on point based upon the fact that we're talking about two different sets of facts. The appellee identifies no clear precedent placing Captain Wilson on notice, that the supervisory liability claim is based upon an allegation of a deficient training program and suicide protocols as compared to the affirmative claims, the individual claims that are based on interactions with Mr. Mays. And those are two different things. And the failure to identify clearly established law relative to the former mandates dismissal of the supervisory liability. Thank you. Thank you. We will take this matter under advisement. Appreciate your argument today.